# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re:<br><br>ALAN MURROW SECREST,<br><br>　　　Debtor.<br><br>AILEEN SECREST,<br><br>　　　Movant,<br><br>v.<br><br>ALAN MURROW SECREST and<br>H. JASON GOLD, Chapter 7 Trustee,<br><br>　　　Respondents. | Case No. 11-11158-RGM<br>(Chapter 7) |

## MEMORANDUM OPINION

The issue before the court is whether the debtor's wife should be granted relief from the automatic stay to pursue equitable distribution of property of the bankruptcy estate in a pending divorce case. The debtor and the chapter 7 trustee opposed the motion. Relief, consistent with the wife's needs in the divorce proceeding but crafted to protect the bankruptcy estate, will be granted.

## Procedural History

The debtor filed a petition in bankruptcy under chapter 7 of the Bankruptcy Code and attended the first meeting of creditors. The bar date for filing proofs of claim, except for governmental proofs of claim has passed. The trustee abandoned all of the property scheduled by the debtor except that which he felt could have value for the estate. The most significant asset that

the trustee retained was the marital home. The debtor valued it at $1,370,000 subject to a lien of $486,417.26. The house was not claimed exempt.[1]

Eleven unsecured proofs of claims were filed: five relatively small claims, each under $10,000, totaling $19,423.74; three claims totaling $53,860.46; two large claims filed by Branch Banking & Trust Company, in the amounts of $890,765.96 and $401,166.66; and one claim filed by the debtor's wife for $1.3 million.[2] No secured claims were filed. The bar date for governmental claims has not passed. The debtor scheduled unsecured priority debts of $324,550.17, of which $16,242.00 was for 2010 federal and state income taxes and $308,272.17 was for unpaid federal withholding taxes for the debtor's limited liability company.

BB&T's claims are for loans made to the debtor's limited liability company. The proof of claim for the larger one contains a personal guarantee signed only by the debtor. The proof of claim for the smaller one contains a personal guarantee signed by both the debtor and his wife. The debtor listed his wife as a co-debtor on two BB&T obligations on Schedule H, a mortgage and a credit line.

The wife filed a motion for relief from the automatic stay. At the first hearing on the motion the court confirmed that the automatic stay did not stay the divorce proceeding as to the establishment or modification of an order for domestic support obligation, for child custody or visitation, or for the dissolution of the marriage, except to the extent that the divorce proceeding

---

[1] Other property not abandoned a landlord's deposit of $1,550.00; the debtor's membership interest in a limited liability company of which he was the sole owner and he valued at $1.00; unpaid loans made to his limited liability company of $124,234.94, which he scheduled with the value as "unknown"; a one-third interest in his mother's home subject to a reverse mortgage, also scheduled as "unknown"; and two cars. No debt secured by the cars is scheduled. The assets were not claimed exempt except for the statutory exemption of $2,000 in one of two cars.

[2] The wife's proof of claim contains no documentation as to the calculation of the amount claimed. It appears to be unliquidated. Selling the house should assist greatly in liquidating and probably reducing the claim because joint debts will be paid, rights of contribution satisfied and liability for guarantee claims fixed. It will not resolve the distribution of marital property. That must be done by the state court in any event.

sought to determine the division of property that is property of the estate. 11 U.S.C. §362(b)(2). The court granted relief to proceed with the equitable distribution as to all assets of the marriage except those that were property of the bankruptcy estate and took the motion under advisement as to the property of the estate that the trustee did not abandon.

No evidence, other that the debtor's schedules and statement of financial affairs, was presented at the hearing.

### Position of the Movant

The debtor filed his petition in bankruptcy four days before the scheduled divorce and equitable distribution trial. As a result of the filing, the state court postponed the trial for a month at which time the issues of spousal and child support, "at least on a *pendente lite* basis", were to be heard. Motion at ¶4. The wife argues that she is "entitled to relief from the [automatic] stay for cause, among other things, in order that she may pursue her equitable distribution claims and have equitable distribution litigated in the divorce proceedings". Motion at ¶6. Her argument, as further developed at the hearing on her motion, suggests that relief from the automatic stay is a matter of right in every domestic relations matter. She relies on three opinions of the Court of Appeals for the Fourth Circuit: two published opinions, *Robbins v. Robbins (In re Robbins),* 964 F.2d 342 (4th Cir. 1992) and *Caswell v. Lang (In re Caswell),* 757 F.2d 608 (4th Cir. 1985); and, one unpublished opinion, *Roberge v. Buis (In re Roberge),* 95 F.3d 42 (4th Cir. August 27, 1996) (table), 1996 WL 482686 (unpublished opinion).

**Discussion**

The wife's argument that relief from the automatic stay is a matter of right in domestic relations matters overlooks the fact that the automatic stay does not arise as to most issues in domestic relations matters. The automatic stay does not arise under §362(a) in the 28 circumstances enumerated in §362(b), one of which, §362(b)(2), specifically addresses domestic relations matters. It provides that:

    (b)    The filing of a petition . . . does not operate as a stay —

    (1)    . . .

    (2)    under subsection (a) —
        (A)    of the commencement or continuation of a civil action or proceeding —
            (i)    for the establishment of paternity;
            (ii)    for the establishment or modification of an order for domestic support obligations;
            (iii)    concerning child custody or visitation;
            (iv)    for the dissolution of a marriage, except to the extent that such proceeding seeks to determine the division of property that is property of the estate; or
            (v)    regarding domestic violence;
        (B)    of the collection of a domestic support obligation from property that is not property of the estate;
        (C)    with respect to the withholding of income that is property of the estate or property of the debtor for payment of a domestic support obligation under a judicial or administrative order or a statute;
        (D)    of the withholding, suspension, or restriction of a driver's license, a professional or occupational license, or a recreational license, under State law, as specified in section 466(a)(16) of the Social Security Act;
        (E)    of the reporting of overdue support owed by a parent to any consumer reporting agency as specified in section 466(a)(7) of the Social Security Act;
        (F)    of the interception of a tax refund, as specified in sections 464 and 466(a)(3) of the Social Security Act or under an analogous State law; or

>    (G)    the enforcement of a medical obligation, as specified under title IV of the Social Security Act

11U.C.S. §362(b)(2). Section 362(b)(2) is comprehensive. It includes or addresses almost every aspect of domestic relations practice. The enumerated matters are not within the scope of §362(a) and are not stayed upon the filing of a petition in bankruptcy. Relief from the automatic stay as to them is not a matter of right; it is not necessary because no stay arises.

While §362(b)(2) comprehensively addresses domestic relations matters, it does not exclude every aspect of domestic relations practice from the automatic stay. The exclusion expressly excludes proceedings "to determine the division of property that is property of the estate". 11 U.S.C. §362(b)(2)(A)(iv). While §362(b)(2) broadly removes domestic relations matters from the automatic stay, equitable distribution matters concerning property of the estate are excluded from the exception and may not proceed. Equitable distribution proceedings concerning property that is not property of the estate may proceed.

Since the automatic stay applies, relief as to equitable distribution proceedings concerning property of the estate cannot be a matter of right. That would be, effectively, the same as if the automatic stay did not apply in the first instance under §362(b)(2). The exception in §362(b)(2)(A)(iv) would then have no meaning. Instead, relief from the automatic stay for equitable distribution proceedings concerning property of the estate is governed by §362(d). The applicable provision here is §362(d)(1), that is, for cause.

The Court of Appeals also makes it clear that when the automatic stay applies, relief from the automatic stay is not a matter of right. It is within the discretion of the bankruptcy court. It stated:

5

> A decision to lift the automatic stay under section 362 of the Code is within the discretion of the bankruptcy judge and this decision may be overturned on appeal only for abuse of discretion. *See In re Boomgarden,* 780 F.2d 657, 660 (7th Cir. 1985).

*In re Robbins,* 964 F.2d at 345. The Court discussed the factors that should be considered. It stated:

> The bankruptcy court correctly stated the factors the court should consider in deciding whether "cause" has been shown. . . . The court must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied. *See In re Peterson,* 116 B.R. 247, 249 (D.Colo.1990) (discussing balancing test). The factors that courts consider in deciding whether to lift the automatic stay include (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

*Id.* (citations omitted). In its unpublished opinion in *Roberge v. Buis (In re Roberge),* 1996 WL 482686 (4th Cir. 1996) (unpublished opinion) the Court of Appeals reiterated the balancing test. It stated:

> In deciding whether a bankruptcy stay should be lifted in order to allow a state court to decide a domestic matter, the Fourth Circuit balances the potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the party seeking relief from the stay if relief is denied.

*Roberge,* 1996 WL 482686, at *2 (unpublished opinion). It then quoted the three factors set out in *Robbins* and found that "those factors weigh heavily in favor of lifting the stay." *Roberge,* 1996 WL 482686, at *2 (unpublished opinion).

Both the plain language of §362(b)(2) and the decisions of the Court of Appeals make clear that for matters subject to the automatic stay imposed by §362(a) – including equitable distribution proceedings concerning property of the estate – relief from the automatic stay is not a matter of right.

It is discretionary with the bankruptcy court and should be granted only if the factors considered weigh in favor of relief.

The discretionary nature of relief from the automatic stay furthers the fundamental purposes of the Bankruptcy Code: to provide the honest but unfortunate debtor with a fresh start, and to treat creditors (subject to the priorities established by Congress) equally. In order to effect these purposes, the filing of a petition in bankruptcy creates an estate that consists of all legal and equitable interests of the debtor as of the commencement of the case. 11 U.S.C. §541. This includes assets jointly held with another party, including the debtor's interest in tenants by the entirety property. *In re Ford,* 3 B.R. 559 (Bankr.D.Md. 1980), *aff'd Greenblatt v. Ford (In re Ford),* 638 F.2d 14 (4th Cir. 1981); *Sumy v. Schlossberg (In re Sumy),* 777 F.2d 921 (4th Cir. 1985). The Bankruptcy Court has "exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of the case, and of property of the estate". 28 U.S.C. §1334(e). This permits the bankruptcy court to administer the estate for the benefit of all creditors of the estate.

These fundamental purposes are furthered by the automatic stay which arises immediately upon filing of a petition in bankruptcy. 11 U.S.C. §362(a). The automatic stay prevents a creditor from exercising control over or obtaining possession of property of the estate. It stops the race to the courthouse to dismember the debtor's estate and assures that, to the extent there are assets, the assets will be distributed to creditors prorata, subject to the statutory priorities.

Three principal factors are considered in determining whether relief from the automatic stay should be granted. *See Robbins,* 964 F.2d at 345. The first is the extent to which state law is applicable. The more that the case disposition is controlled by state law, the more the bankruptcy court should defer to the state court, particularly were the area of the law is within the special

expertise of the state court. Equitable distribution is a "category of cases in which state courts have a special expertise and for which federal courts owe significant deference." *Id.*. Bankruptcy courts should generally defer to state courts in these matters and not undertake an equitable distribution hearing.

The second is judicial economy and the efficient administration of the bankruptcy case. *Id.* This factor seeks to avoid duplication of effort in different forums and to conserve the resources of the litigants and the courts while providing for the efficient and effective administration of the bankruptcy estate and the resolution, in this instance, of the state court divorce action.

The third is the protection of the bankruptcy estate. *Id.* This factor seeks to protect the estate from incurring unnecessary litigation expenses, to protect property of the estate from actions taken in other courts, to prevent the estate from being divested of property of the estate, and to assure that estate assets are used to pay creditors of the estate in accordance with the order of priorities established by Congress.

These factors were applied by the bankruptcy court in *Robbins* which was sustained on appeal. The bankruptcy court granted relief from the automatic stay to allow the wife to finalize an equitable distribution award from a Florida court. While the case is most frequently cited as a domestic relations case, the fact that it involved a domestic relations matter was actually not important. The same result would have been obtained without regard to the nature of the underlying litigation if the litigation were in the same procedural posture.

It is important to focus on the facts to fully appreciate this. Harry Robbins filed a petition in bankruptcy under chapter 11 of the Bankruptcy Code on November 20, 1990, just as judgment was about to be entered by the Florida divorce court on an equitable distribution claim. *Id.* at 344.

8

The equitable distribution case had been litigated for several years. The divorce itself was entered in October, 1988. The Court of Appeals stated:

> In addition to dissolving their marriage, the divorce decree divided their marital property under Florida equitable distribution law. The decree distributed the Robbins' most valuable asset, stock in the closely held Tweetsie Railroad, Inc. ("the Tweetsie Stock"), a corporation that owns an amusement park and has sizable real estate holdings in western North Carolina. The Florida trial court valued the stock at the time of the divorce at $4 million, and ordered that Harry grant Revalle an undivided half interest in the stock. The Florida Court of Appeals reversed this aspect of the decision, ruling that Revalle was instead entitled to the cash value of her share in the marital stock. The court remanded the case to the trial court to provide Revalle with the stock's cash value.
>
> On remand, the parties agreed that the issue could be heard by a special master in lieu of a trial, stipulating that the master's disposition would be presented to the trial court judge solely for the purposes of signature. On October 31, 1990, the master issued a report interpreting the court of appeals to have held that Revalle was entitled to the cash value of her stock at the time of the divorce, $2 million, notwithstanding Harry's objections that the value of the stock subsequently had declined precipitously. The master ordered that Harry pay his former wife five annual installments of $400,000, plus interest, and granted Revalle a lien on the Tweetsie Stock to secure performance of the order.
>
> On November 20, 1990, before the trial court entered the master's judgment, Harry filed a Chapter 11 bankruptcy petition in the Western District of North Carolina before the Hon. Marvin R. Wooten. The petition automatically stayed the equitable distribution proceedings in Florida pursuant to the Bankruptcy Code, 11 U.S.C. §362(a)(1).

*Id.* at 343-344.

In short, what had happened was that the final divorce decree by the trial court awarded Mrs. Robbins one-half of the stock in the Tweetsie Stock. On appeal, the Florida Court of Appeals reversed, ordered that Mrs. Robbins be paid one-half of the value of the stock, $2 million, rather than be awarded one-half of the stock itself and remanded the case to the trial court to determine how the monetary award would be paid. *Robbins v. Robbins,* 549 So.2d 1033 (Fla.Dist.Ct.App.3 Dist. 1989)

9

*rev. den. Robbins v. Robbins,* 560 So.2d 234 (Fla. 1990) (Table, No. 75,084). On remand, the case was referred to a special master. The parties stipulated that the special master's report would be binding and that they would it submit the trial judge solely for entry of the final order. The special master issued his report which provided that the $2 million should be paid in five annual installments. The case was over except for the trial judge signing the final order. Before the trial judge could sign the final order, Mr. Robbins filed bankruptcy.

The bankruptcy court was faced with a pre-petition debt that had been liquidated after extensive litigation in the state court, appealed, remanded, further hearings held, the decision announced, but the final order not yet signed. It was important to the chapter 11 reorganization to liquidate that debt so that the chapter 11 debtor could submit a plan of reorganization that would take into account the debt and Mrs. Robbins and the other creditors could intelligently vote for or against it and, if appropriate, object to it. In these circumstances, bankruptcy courts will generally lift the stay to permit the state court to enter the judgment liquidating the claim. *See Pieklik v. Hudgins (In re Hudgins),* 102 B.R. 495, 497 (Bankr.E.D.Va. 1989).

All three factors were in favor of granting relief from the automatic stay. The resolution of the matter was controlled by state law. Bankruptcy law had no impact on the outcome of the divorce litigation. Judicial economy and the efficient administration of the bankruptcy case were greatly enhanced. The matter had already been adjudicated. The only thing missing was the judge's signature which the parties had already agreed would be, essentially, a formality. The bankruptcy case needed the liquidation of the claim so that it could go forward. The bankruptcy estate was fully protected. ***Critically, the divorce order was a monetary award. No property of the estate was to be transferred out of the estate.***

In the present case, the same three factors do not favor granting relief from the automatic stay. It is true that domestic relations is an area of law in which the state courts have a special expertise and in which the bankruptcy court should not intrude. However, the issue is not which court will hear the equitable distribution case. The state court will hear it. The issue is whether the state court should be permitted to administer the bankruptcy estate piecemeal and for the benefit of a single creditor by entering an equitable distribution award that may divest the bankruptcy estate of property of the estate. The expertise of the state court is in liquidating the domestic relations claim. The expertise of the bankruptcy court is in liquidating the property of the estate and distributing it to creditors. This court has exclusive jurisdiction over property of the estate, its liquidation, and the distribution of the proceeds to the creditors.[3]

---

[3] In Virginia, an equitable distribution award does not affect the rights of third-party creditors. Va. Code (1950) §20-107.3(B) provides:

> For the purposes for this section only, both parties shall be deemed to have rights and interests in the marital property. However, such interests and rights shall not attach to the legal title of such property and are only to be used as a consideration in determining a monetary award, if any, as provided in this section.

It continues in Va. Code (1950) §20-107.3(C):

> Except as provided in subsection G, the court shall have no authority to order the division or transfer of separate property or marital property, or separate or marital debt, which is not jointly owned or owed. The court may, based upon the factors listed in subsection E, divide or transfer or order the division or transfer, or both, of jointly owned marital property, jointly owed marital debt, or any part thereof. The court shall also have the authority to apportion and order the payment of the debts of the parties, or either of them, that are incurred prior to the dissolution of the marriage, based upon the factors listed in subsection E.
>
> As a means of dividing or transferring the jointly owned marital property, the court may transfer or order the transfer of real or personal property or any interest therein to one of the parties, permit either party to purchase the interest of the other and direct the allocation of the proceeds, provided the party purchasing the interest of the other agrees to assume any indebtedness secured by the property, or order its sale by private sale by the parties, through such agent as the court shall direct, or by public sale as the court shall direct without the necessity for partition. All decrees entered prior to July 1, 1991, which are final and not subject to further proceedings on appeal as of that date, which divide or transfer or order the division or transfer of property directly between the parties are hereby

(continued...)

Judicial economy is enhanced by the bankruptcy court administering the property of the estate. The trustee can quickly sell the house under 11 U.S.C. §363(h). This will allow the bankruptcy case to be administered promptly and avoids delays that may arise in the divorce case which would likely require the equitable distribution determination before the sale of the house. If the trustee sells the house, its value is established on the open market rather than by appraisal testimony at an equitable distribution hearing. While there was no evidence presented at trial as to the wife's assets, the debtor's schedules and statement of affairs suggest that this may well be the parties' single largest asset. Liquidating its value will simplify the equitable distribution hearing. The wife's interests are fully protected. She may purchase the property at the sales price offered by a third party. 11 U.S.C. §363(i). If she elects not to purchase the property, her one-half of the proceeds, after the costs of sale, payment of liens, and a reserve for payment of unsecured joint debts, will be promptly distributed to her. Distribution will not be held up by the further administration of the estate. The trustee also has the ability to sell the house free and clear of certain liens under 11 U.S.C. §363(f). This is something that the wife cannot accomplish herself.

---

[3](...continued)
validated and deemed self-executing. All orders or decrees which divide or transfer or order division or transfer of real property between the parties shall be recorded and indexed in the names of the parties in the appropriate grantor and grantee indexes in the land records in the clerk's office of the circuit court of the county or city in which the property is located.

Va. Code (1950) §20-107.3(C) (effective July 1, 2011). The 2011 amendment to §20-107.3(C) adds text expressly addressing marital debt.

The Code of Virginia, while permitting equitable distribution of property of the parties, does not permit the distribution or division to affect the rights of creditors. As set out in §20-107.3(C), if property is divided or vested in one of the parties, the party obtaining the property shall assume the indebtedness. The rights of creditors are not affected. Even though the court may determine – as to between the spouses – which spouse is to pay which debt and in what amount, this allocation does not change the contract with the creditor or the liabilities of the parties to the creditor.

A trustee in bankruptcy has the rights of a lien creditor. 11 U.S.C. §544. In addition, he has the ability to convey all property of the debtor including property jointly owned. 11 U.S.C. §363.

The bankruptcy estate is protected because the house is administered under the supervision of the bankruptcy court. There is no risk that the estate will be divested of property that should be distributed to creditors.

The wife presents an additional argument in an effort to establish cause for relief from the automatic stay. She asserts that while the divorce proceeding is itself not stayed by §362(a) because of §362(b)(2), the state court will not grant her a divorce unless and until the equitable distribution matter can also be resolved. This may well be the general procedure in the state court, but it is not mandated by the Code of Virginia. The state court has several options.

Essential aspects of the case, except for equitable distribution of property of the bankruptcy estate, may go forward. In this case, the parties agree that the divorce trial was postponed for a month and that the issues of spousal and child support, "at least on a *pendente lite* basis," would be heard at the continued hearing. Motion at ¶4. While this is not full resolution of the case, essential matters can be resolved.

The state court may go further than a *pendente lite* order and issue a divorce decree. The Code of Virginia permits the state court to grant a divorce, but postpone the equitable distribution hearing if one of the parties requests the divorce to proceed and there are clear reasons for doing so. Va. Code (1950) §20-107.3(A).[4]

---

[4]This provision has changed over time. The original text of Section 20-107.3(A) was added in 1986. Act of Assembly, 1986, c. 533. It followed the decision of the Virginia Court of Appeals in *Parra v. Parra*, 1 Va. 118, 336 S.E.2d 157 (Va.Ct.App. 1985). In this case, the Virginia Court of Appeals held that the equitable distribution hearing could be held more than 21 days after a final decree of divorce was entered. In 1986, the General Assembly added the last sentence to provide that the jurisdiction of the court did not extend to more than 21 days after the entry of final decree of divorce. Thus, the equitable distribution had to be held, as a practical matter, at the time of the divorce hearing. This sentence, however, has changed over time. In 1991, the language "because of the complexities of the parties' property interests" was deleted so that the state court only needed the consent of both parties and a determination that a later hearing was "clearly necessary". Acts of the Assembly, 1991, c. 640. In 1992, the present version was adopted in which the requirement that both parties make a motion to postpone the equitable distribution was changed to either
(continued...)

The state court may proceed with an equitable distribution hearing as long as it does not involve distribution of property of the estate. A monetary award, as in *Robbins*, instead of a division of assets may be appropriate if the bankruptcy court is likely to administer an otherwise marital asset. While this may require a more careful presentation by counsel, such a hearing may fully resolve all equitable distribution matters, particularly in this case. Here, the trustee abandoned all the property of the estate except those assets that might have value and may be liquidated by the trustee.

The state court may postpone the equitable distribution hearing pending developments in the bankruptcy case. Two important issues are whether the debtor will receive a discharge and what debts will be paid by the trustee.[5] Equitable distribution involves not only the division of marital assets, but the assignment of responsibility for the payment of martial debts. In this case, the debtor was granted a discharge on May 31, 2011. This simplifies the equitable distribution hearing with respect to debts and the debtor's ability to pay spousal support and an equitable distribution award. To the extent that the discharged debts were obligations of only the debtor and not of his wife, they no longer need to be considered in an equitable distribution hearing. To the extent that there are joint

---

[4](...continued)
party. The requirement of a finding of "such action is clearly necessary" was retained. Acts of the Assembly, 1992, c. 88. The local procedure appears to require the equitable hearing be held prior to or at the time of the divorce hearing, preserving the intent of the General Assembly that they be concluded together. While there are many excellent reasons for such a procedure, it does not prevent, where necessary, the postponement of the equitable distribution hearing and the granting of an earlier divorce. Whether the circumstances of this case or any other bankruptcy would be such a "clearly necessary reason" is a matter for the state courts to determine.

[5]The bar date for filing dischargeability claims has passed. One complaint was filed for a debt of approximately $70,000. The tax obligations are non-dischargeable. It is not clear if there are domestic support obligations or property settlement obligations to be paid. If there are domestic support obligations, they will be paid first. 11 U.S.C. §507(a)(1)(A). Certain tax obligations are in eighth priority. 11 U.S.C. §507(a)(8). Domestic support orders and property settlement orders are not dischargeable in this proceeding. 11 U.S.C. §523(a)(5) and (15). The residence will be sold more quickly by the trustee pursuant to his powers under §363. Upon the sale, after the secured lien of the property, the costs of administration attributable by the sale, and another joint debts, one-half will be distributed to the spouse, not as payment on a claim, but as her property. The debtor's portion will reduce debts, first for domestic support obligations and then for taxes.

debts, they will be paid from the proceeds from the sale of the house which was held by the debtor and his wife as tenants by the entirety.[6] *In re Ford,* 3 B.R. at 576; *Williams v. Peyton (In re Williams),* 104 F.3d 688, 689-90 (4th Cir. 1997). This will also simplify the equitable distribution hearing.

In the present case, the wife presented no evidence as to her assets or liabilities or anything else that would assist this court in determining what effect the automatic stay will have on the divorce proceeding, that is, how she will be disadvantaged by continuing the automatic stay as to equitable distribution of property of the estate or how she will be assisted by relief from the stay. The burden of proof is on the wife as the movant to show cause exists for relief from the automatic stay. She has not sustained this burden.

### *Roberge v. Roberge*

The wife relies heavily *Roberge v. Roberge*. *Roberge* and *Robbins* are frequently cited for the proposition that the automatic stay should be, or must be, terminated for all domestic relations matters, including equitable distribution of property of the estate. The first matter that must be addressed is that opinion of the Court of Appeals in *Roberge* is unpublished. While the text of the

---

[6] Either the debtor or the wife could have claimed the house as exempt. It is not clear that this would have had any effect in this case. Generally, property claimed exempt ceases to be property of the estate and would be subject to equitable distribution at that point. Here, however, the debtor scheduled three significant debts as joint debts, apparently with his wife. Schedule H, "Co-debtors", lists the wife as a co-debtor on the mortgage on the house for which a proof of claim was filed and which the debtor values at $486,417.26; and a line of credit to the debtor's business, then known as Alan Secrest and Associates, LLC, in the amount of $401,166.66. The proof of claim attaches the guarantee of the debtor which is ostensibly signed by both the debtor and the spouse. Proof of Claim 4. Branch Banking and Trust Company filed a second proof of claim for a loan made to Alan Secrest and Associates, LLC. The outstanding balance as of the date of the filing was $890,765.96. Like Proof of Claim 4, it is unsecured. In this instance, the proof of claim also includes the guarantee, but the guarantee is signed only by the debtor. In this case, it appears that the home, even if claimed exempt, would be administered by the trustee for the benefit of at least one joint creditor.

Court of Appeals' unpublished opinion is now widely available, Local Rule 32.1 of the Court of Appeals for the Fourth Circuit states:

> Citation of this Court's unpublished dispositions issued prior to January 1, 2007, in briefs and oral arguments in this Court and in the district courts within this Circuit is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case.
>
> If a party believes, nevertheless, that an unpublished disposition of this Court issued prior to January 1, 2007 has precedential value in relation to a material issue in a case and that there is no published opinion that would serve as well, such disposition may be cited if the requirements of FRAP 32.1(b) are met.

In addition, unpublished opinions contain the notation: "Unpublished opinions are not binding precedent in this circuit." The precedential value of an unpublished opinion is somewhat in limbo and, while it may have precedential value, is not binding precedent on a district court or a bankruptcy court.

*Roberge* is of precedential value in that it reaffirms and applies the *Robbins* multi-factor balancing test in determining whether relief from the automatic stay should be granted, one factor of which is the deference to be given to state law matters.

However, the precedential value of *Roberge*, to the extent that it is cited for the proposition that relief should be granted in every case involving domestic relations, is less certain. It is not likely that the Court of Appeals would make such a categorical holding today because of the plain language of the 2005 amendments to §362(b)(2). *Roberge* was decided in 1996. Section 362(b)(2) was first amended to add provisions excluding some domestic relations matters two years earlier, in 1994. *See* Pub. L. No. 103-394, §304(b). The provisions were much briefer and simpler than today. None involved equitable distribution. It was later amended in 2005, this time quite substantially, by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, §214. The

16

2005 amendment was comprehensive and excluded all domestic relations matters, except the "division of property that is property of the estate." 11 U.S.C. §362(b)(2)(A)(iv). Undoubtedly, the Court of Appeals continues to consider domestic relations matters as falling well within the expertise of the state courts and entitled to great deference. However, in light of the present statute, it would not likely be considered the sole determinative factor. The balance Congress intended to draw between the needs of domestic relations litigants and bankruptcy creditors is much clearer today than in 1996.

The precedential value of *Roberge* in the application of the law to the facts of this case is less certain because this case rests on the Virginia equitable distribution law. *Roberge* rested on Florida equitable distribution law. The bankruptcy court and the Court of Appeals held differing views as to Florida marital property rights. The bankruptcy court found that under Florida property rights the debtor was entitled to one-half of the property. The Court of Appeals viewed Florida equitable distribution differently, suggesting that Florida equitable distribution rights may have became fixed at an earlier time than in Virginia, that is to say, that the trustee in bankruptcy in that case, even though he had the rights of a bona fide purchaser for value and a judgment lien creditor, would have been subordinate to the rights of the equitable distribution award in favor of Mrs. Roberge.[7]

---

[7]The Court of Appeals stated:

> The bankruptcy court denied the requested relief from the automatic stay reasoning that it did not matter whether it lifted the stay because, as a factual matter, under Florida [law, the debtor] owned 50% of the property when he filed his bankruptcy petition. . . . Thus, the bankruptcy court believed that no special expertise was needed in order to dispose of the marital assets equitably. In its view, both the bankruptcy court and the Florida court could competently and fairly divide the property interest in equal halves. . . .
>
> We agree with the district court. . . . Under Florida law, the divorce converted the tenancy by the entirety to a tenancy in common. . . . Florida law divides marital property into equal shares, *unless* there is a showing that one spouse is entitled to a greater share. . . .

(continued...)

17

Accepting this difference, the outcome of *Roberge* does not necessarily presage the outcome of this case. The present case involves Virginia equitable distribution law which is, especially today, much clearer that lien creditors are protected in an equitable distribution hearing. Va.Code (1950) §20-107.3(C) and (D).

*Roberge* is not controlling in the present case. While the principal that the balancing test is the appropriate test to determine whether relief from the automatic stay should be granted remains the applicable test, its application in this case is different from the application in 1996 in *Roberge*. *Roberge* applied Florida law in effect in 1996, which is quite different from Virginia law in effect in 2011.

## Conclusion

The debtor's wife is entitled to proceed with the divorce case. Except as to the equitable distribution of property of the estate, the automatic stay does not apply in the first instance. She can accomplish much without relief from the automatic stay. There is nothing to prevent, as in *Robbins*, an equitable distribution hearing from proceeding provided that there is no order transferring property of the estate to the spouse. The equitable distribution hearing may proceed to liquidate the claim. Only property that is not property of the estate may be divided between the debtor and the debtor's wife. As in *Robbins*, a monetary award may be made.

---

[7](...continued)
Because the extent of each spouse's interest in the home turns on Florida law, the question of their respective interests is best determined by a court of that state.

*Roberge,* 1996 WL 482686 at *1 (internal citations omitted).

18

This court previously entered an order that made clear that the provisions of 11 U.S.C. §362(b)(2) excluded most of the matters before the state court from the application of the automatic stay. A supplemental order will issue that makes clear that an equitable distribution hearing and order may go forward so long as no property of the estate is directed to be transferred to the debtor's wife or out of the bankruptcy estate. The equitable hearing may well be simplified because the bar date for filing proofs of claims and objecting to the debtor's discharge has expired and some of the issues that would otherwise have consumed the time and energy of the state court and counsel are now moot.

Alexandria, Virginia
July 15, 2011

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

Copy electronically to:

Steven B. Ramsdell
Alexander M. Laughlin
Jeffrey A. Vogelman

16887